## In Re Julia F. Hickok's Estate.

October Term, 1904.

Present: Rowell, C. J., Tyler, Munson, Watson, and Powers, JJ.

Opinion filed January 26, 1906.

*Inheritance Tax—Nature of Exemptions—Foreign Corporations—Constitutional Law—Uniformity and Equality of Taxation—No. 46, Acts 1896.*

The acquisition of property by descent or by will is not a natural right, but a privilege accorded by the State, which has the power both to determine the devolution of estates, and to exact a just and proportional contribution as they pass.

Inheritance taxes are not taxes upon property, but taxes upon the transmission of property, and are not in contravention of constitutional provisions requiring uniformity and equality of taxation.

Exemptions from taxation are to be strictly construed, and no claim of exemption can be sustained unless within the express letter or the necessary scope of the enacting clause.

No. 46, Acts 1896, entitled "An act to tax collateral inheritances," exempts from its operation property passing "to or for charitable, educational or religious societies or institutions, the property of which is exempt by law from taxation." *Held*, that this exemption is confined to societies the property of which is exempt from taxation by the laws of this State, and has no application to institutions incorporated by and located in other states.

Exemptions from taxation are not in contravention of constitutional provisions requiring uniformity and equality of taxation.

APPEAL from the final decree of the Probate Court distributing the estate of Julia F. Hickok, and holding that five foreign religious societies, who were legatees, were exempt from the collateral inheritance tax imposed by No. 46, Acts 1896. Heard on an agreed statement at the March Term, 1904, Chittenden County, *Munson*, J., presiding. Judgment, *pro forma*, that said legacies are subject to said tax. Said estate excepted.

The agreed statement shows that the five bequests in question were as follows: $3000 to the Hampton Normal and Educational Institute, a Virginia corporation located at Hampton in that State, and $6384.78, to each of the following societies: The Congregational New West Educational Commission, an Illinois corporation located at Chicago; The Congregational Home Missionary Society, a New York corporation located at the city of New York; The American Board of Commissioners for Foreign Missions, a Massachusetts corporation located at Boston; and The American Missionary Association, a New York corporation located in the city of New York. The agreed statement further shows that these corporations are charitable, religious, or educational institutions, and that by

the laws of their respective states their property is, respectively, exempt from taxation.

*W. L. Burnap* for the estate.

Had the Legislature intended to restrict the exemption to domestic corporations, the word "statute" would have been used in the description of the corporations to be exempted, rather than the word "law." *White* v. *Howard,* 46 N. Y. 144; *In Re Prime,* 18 L. R. A. 713; Black, Int. Statutes, 48, 56; *Alfred University* v. *Hancock,* 46 Atl. 178; *State* v. *Johnston,* 46 Atl. 776; *State* v. *Brackley,* 50 Atl. 589.

The statute in question is in contravention of our Constitution requiring uniformity and equality of taxation. Constitution of Vermont, Ch. 1, Arts. 1, 2, 9; *Oliver* v. *Washington Mills,* 11 Allen 274; *Portland Bank* v. *Apthrop,* 12 Mass. 252; *Com.* v. *Bank,* 5 Allen 431; *Curry* v. *Spencer,* 61 N. H. 589; *State* v. *Express Co.,* 60 N. H. 219.

*J. E. Cushman,* Commissioner of State Taxes, for the State.

The exemption in question is confined to societies the property of which is exempt from taxation by the laws of this State. *Minot* v. *Winthrop,* 162 Mass. 113; *Rice* v. *Bradford,* 180 Mass. 545; *Matter of Prime,* 136 N. Y. 347, 360; *Matter of Smith,* 77 Hun. 134; *Matter of Taylor,* 80 Hun. 589; *Matter of Merriam,* 141 N. Y. 479; *Matter of McCosky's Est.,* 1 N. Y. Supp. 782; *Matter of Trugg's Est.,* 15 Ib. 548; *Matter of James' Est.,* 27 Ib. 288; *Matter of Fayerweather's Est.,* 30 Ib. 273; *Matter of Taylor's Est.,* 30 Ib. 582; *U. S.* v. *Perkins,* 163 U. S. 625-630; *People ex rel.* v. *Western Seaman's Friends Society,* 87 Ill. 246; *State* v. *Bentley,* 75 Vt. 164.

MUNSON, J. No. 46, Acts of 1896, entitled "An act to tax collateral inheritances," exempts from its operation property passing "to or for charitable, educational or religious societies or institutions, the property of which is exempt by law from taxation." This exemption is invoked by institutions incorporated by and located in the States of Massachusetts, New York, Virginia and Illinois. The Tax Commissioner contends that foreign corporations are not within the exemption.

It is a well established general rule that exemptions from taxation are to be strictly construed, and that no claim of exemption can be sustained unless within the express letter or necessary scope of the exempting clause. *Ford* v. *Delta & Pine Land Co.*, 164 U. S. 663; Book 41, Law. ed. 590. The particular exemption in question is found in the statutes of other jurisdictions, and has often received the construction for which the Commissioner contends. *Matter of Prime*, 136 N. Y. 347; *People ex rel.* v. *Western Seaman's Friends Society*, 87 Ill. 246; *Minot* v. *Winthrop*, 162 Mass. 113.

It is argued that the exemption is in recognition of the beneficent purpose of these institutions, and that inasmuch as the purpose is common to them all wherever located, the exemption should be held applicable to all. But we think, with the authorities above cited, that in the absence of any language indicative of a different intent, the Legislature must be deemed to have made the exception for the benefit of its own institutions.

It is suggested that the use of the word "law" instead of "statute" indicates an intention to include corporations outside our jurisdiction; but our statute is the same in this respect as those construed in the New York and Massachusetts cases above cited. It is true, as further suggested, that in the *Mat-*

*ter of Prime,* which was cited as an authority in *Minot* v. *Winthrop,* there were features peculiar to the New York statute which entered into the consideration of the subject and bore upon the conclusion reached; but we think these cases may nevertheless be relied upon in support of the State's contention. It was said in *Humphreys* v. *State,* 70 O. St. 67, 101 Am. St. 888, upon a review of the New York and other cases, that the exemption clause of their statute would have related only to their own institutions, even if the words "in the State" had been omitted.

But the main contention of the estate is based upon the phraseology of our Constitution, which declares in effect that every member of society is bound to contribute "his proportion" towards the expense of the protection which the State affords him. It is said that this excludes all methods of taxation that are not uniform, equal and proportional, and that the law in question lacks the required qualities.

The case of *Curry* v. *Spencer,* 61 N. H. 624, decided in 1882, supports this position. The New Hampshire constitution provides for the laying of "proportional" taxes, and declares that an inhabitant is bound to contribute only his share. The Court considered that these provisions precluded the imposition of an inheritance tax, whether it was regarded as a tax upon property or upon a civil right or privilege.

It is said in the note to *State* v. *Hamlin,* 86 Me. 495, in 41 Am. St. 569, that *Curry* v. *Spencer* is the only case which holds that a tax on inheritances is unconstitutional because not equal and uniform in its operation. But it is claimed in argument that the cases holding the contrary were decided under constitutions which provide specifically for the imposition of excises, or which make the requirements of equality and uniformity applicable only to taxes imposed on real and personal

property.   It is certain, however, that in one of these cases this restriction to property was not found in any express statement, but was arrived at by inference and construction.   *Eyre* v. *Jacob,* 14 Gratt. 422.

It was said in the New Hampshire case above cited, in arguing the inapplicability of *Eyre* v. *Jacob,* that the Virginia constitution required that taxes on property should be uniform, and that the decision of that case was put expressly upon the ground that the requirement of uniformity applied to property only.   The provision referred to was that all property other than slaves should be taxed in proportion to its value. But this clause was preceded by the general declaration that taxation should be equal and uniform throughout the commonwealth, and the court considered the effect of this provision, and said the inference was strong that property only was in the minds of the framers.

It is clear that the language of our Constitution will not permit this treatment of the question of equality.   The provision requiring a proportional contribution cannot be restricted to any particular subject of taxation, for it relates to the entire burden cast upon the taxpayer.   It provides that the expenses of government shall be apportioned equally, and not merely that exactions levied upon property shall be equal.   The question is, what constitutes equality of apportionment within the meaning of this provision; and in determining this the basis of the tax in question must be considered.

It is now universally conceded that taxes of this character are not taxes upon property, but taxes upon the transmission of property.   It is considered that the acquirement of property by descent or by will is not a natural right, but a privilege accorded by the State.   It is argued that the power to determine the devolution of estates includes the power to exact just

and proportional contributions as they pass. And it has been said repeatedly in judicial discussions upon this subject that inheritance charges are not precluded by constitutional provisions requiring uniformity and equality of taxation.

We think our constitutional requirement of proportional contributions for the support of the government was not intended to restrict the State to methods of taxation that operate equally upon all its inhabitants, regardless of the variety and measure of the advantages derived from its protection and regulation. A member of the body politic has from the State not only the protection of his property, but the privilege of taking property by descent and by will. It seems clear that privileges of this character, as well as property, are to be considered in determining the just proportion of the individual.

It is suggested further that the law is invalid because of the inequality arising from the exemption of estates not exceeding two thousand dollars in value. The constitutional provision under consideration does not prevent the making of exemptions. *Colton* v. *Montpelier,* 71 Vt. 413, 45 Atl. 1039.

*Judgment affirmed; to be certified to the Probate Court.*